# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **HAYLI COURTOIS** | ) | 3:22-cv-01249 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CENTRAL CONNECTICUT STATE** | ) | SEPTEMBER 26, 2023 |
| **UNIVERSITY** | ) | |
| *Defendant.* | | |

## <u>MEMORANDUM OF DECISION</u>
## RE: MOTION TO DISMISS (ECF NO. 15) & MOTION TO AMEND COMPLAINT (ECF NO. 24)

Kari A. Dooley, United States District Judge

      This action arises out of the on campus sexual assault of Plaintiff by a fellow student while she was enrolled as a freshman at Defendant, Central Connecticut State University ("Defendant" or "the University"). Plaintiff brings a claim pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §1681 *et seq.* ("Title IX") alleging that Defendant violated Title IX by failing to prevent the assault and also in relation to its conduct in the aftermath of the assault. Pending before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in which Defendant avers that the allegations, accepted as true, do not plausibly allege a violation of Title IX by the University. Plaintiff opposed the motion but also filed a motion to amend the complaint to provide additional factual allegations in support of the Title IX claim. Defendant objected to the motion to amend.[1] For the reasons that follow, the motion to dismiss is GRANTED and the Motion to Amend is GRANTED in part.

---

[1] Plaintiff did not file, as was her right, an amended complaint within 21 days of the filing of the motion to dismiss. And filing a motion to amend in conjunction with the briefing on the motion to dismiss tends to confuse the issues to be decided and in what order. The Court will address the motion to dismiss the complaint as filed but will consider the amended complaint in the context of the motion to amend, *i.e.*, if the Court determines to grant the motion to dismiss the original complaint, it would consider the allegations of the amended complaint on the issue of futility. Between the two motions, all of these issues are fully briefed.

**Allegations in the Original Complaint**

On October 23, 2020, Plaintiff was a freshman at the University,[2] living in on-campus housing. *Id*. ¶ 5. On that date, she was sexually assaulted by a fellow student in an on-campus dormitory, at which her assailant and other students had gathered for a party. *Id*. ¶ 6-7. During the party, while Plaintiff was in the dormitory bathroom, the assailant entered the bathroom, locked the door, and using physical force, sexually assaulted her. *Id*. ¶¶ 9-9.[3]

The party attendees consumed alcohol while in the dormitory, which is a violation of the University's policies. *Id*. ¶ 13. On information and belief, the party occurred in violation of the University's COVID-19 policies and restrictions as well as its policies and restrictions regarding parties or social gatherings within dormitories. *Id*. ¶ 12.

Following the assault, Plaintiff sought treatment for her physical injuries at the Hospital of Central Connecticut ("HCC") in New Britain, Connecticut on October 23, 2020, where HCC personnel performed a rape kit and diagnosed her physical injuries resulting from the assault. *Id*. ¶¶ 22-23. Plaintiff also cooperated with the law enforcement officials who investigated the incident. *Id*. ¶ 14.

Following the assault, the University failed to reasonably inform Plaintiff of her assailant's status at the school including his attendance of classes and or his presence on campus. *Id*. ¶ 15. The assailant was permitted by the University to remain on campus for two weeks following the assault and was permitted to complete his Fall semester. *Id*. ¶ 16. Plaintiff requested but was not permitted to reschedule a math test which had been scheduled for the day following the assault – October 24, 2020. *Id*. ¶ 17.

---

[2] The University receives federal funding. Compl., ECF No. 1, ¶ 29.
[3] This horrific assault is detailed in the Complaint but because the specific nature of the assault is not germane to the Court's decision, those details are not included herein.

The University was "aware of a longstanding history of assault, sexual abuse, sexual misconduct and/or sexual assault occurring on its campus and on similarly situated campuses throughout the country." *Id.* ¶ 19. The University was aware that students are at a "high risk of nonconsensual sexual contact" during "parties or other social gatherings" and that such gatherings frequently involve excessive alcohol consumption and occur in dormitories on campus. *Id.* ¶ 20.

Based upon these allegations, Plaintiff asserts a Title IX claim arising out of the assault itself and the University's conduct thereafter. She alleges that the University was deliberately indifferent to the sexual harassment/assault by her assailant.

**Additional Allegations – the Proposed Amended Complaint**

In the proposed Amended Complaint, Plaintiff provides additional factual allegations. Plaintiff first clarifies that the assault took place during the early morning hours of October 23, 2020, not on October 22, 2020. Am. Compl., ECF 24, ¶ 6. Other relevant additional factual allegations are as follows:

- During the time and place at which the assault occurred, Defendant maintained a policy of monitoring and restricting entry into its dormitories to protect its students, requiring that a person seeking entry into the dorm produce an identification card to the resident assistant ("RA") or other authorized agent of the Defendant and that any identification card produced be color-coded to determine whether the person seeking entry resided in that particular dorm building. *Id.* ¶ 12. Prior to the assault, Defendant, its agent, or employee failed to check the identification cards of, or otherwise monitor, persons entering the dorm building in question in violation of its policy. Defendant also maintained a policy of restricting the number of guests who were permitted to be present in a dorm suite at any given time. *Id.* ¶¶ 13-14.

- During the period leading up to and including the time of the attack, Defendant, its agents, and/or employees permitted approximately ten people to be present in the dorm suite in violation of its policy. *Id.* ¶ 15.

- During the period leading up to and including the time of the attack, Defendant, its agent and/or employees permitted the occupants of the dorm suite in question to consume alcohol in violation of Defendant's policy. This consumption was obvious in that the occupants of the dorm suite and their guests were openly drinking alcohol in its original container while walking throughout the hallways of several different floors. It was also obvious to anyone who was present that the occupants and guests were

3

intoxicated as they were drinking alcohol from the original containers and some of them fell to the floor in the elevator and hallway. *Id.* ¶ 17.

- At the time and date of the assault, Defendant maintained a "quiet hours" policy during which occupants and guests were prohibited from playing loud music or engaging in activities which created undue noise which would disturb the other students who resided in the building. *Id.* ¶ 18.

- During the period leading up to and including the time of the attack, Defendant, its agents, and/or employees permitted the occupants of the dorm suite where Plaintiff was assaulted to play loud music late into the evening, go back and forth between dorm suites on the same floor and on different floors, and yell at each other in the hallway and elevator in violation of Defendant's policy. *Id.* ¶ 19.

- At the time and date of the assault, Defendant also maintained a policy of requiring that two to three resident assistants live on each floor to ensure, among other things, compliance with, and the enforcement of, Defendant's foregoing policies. *Id.* ¶ 20.

- Despite the presence of resident assistants on the same floor as the dorm suite in question, the resident assistants failed to enforce Defendant's foregoing policies and prevent the students from violating said policies. *Id.* ¶ 21.

- During the period leading up to and including the time of the attack, Defendant maintained the Ruthe Boyea Women's Center ("Center") to "provide resources, to advocate, to inform, and to support personal development" by offering a "variety of services for and about women." *Id.* ¶ 22.

- One of the services offered by Defendant through its Center is the education of its female students about certain "facts" concerning "sexual assault," including, but not limited to the following:

  o 1.3 women (age 18 and older) in the United States are forcibly raped each minute which translates to 78 per hour, 1,871 per day or 683,000 per year;

  o 91% of the victims of sexual assault are female;

  o Of the rapes that occur on college campuses, 80 to 95% are committed by someone known to the victim;

  o 90% of the rapes on campus occur when either the rapist or victim has used alcohol. *Id.* ¶ 23.

- At the time of the attack. Defendant maintained written Title IX grievance procedures ("procedures") which were implemented on September 23. 2020. *Id.* ¶ 24.

- These procedures provided, *inter alia*, that under Defendant's policy, victims of sexual harassment have the right to receive supportive measures from Defendant which may include, but are not limited to the following:

- o Counseling;

- o Extensions of deadlines or other course-related adjustments;

- o Modifications of work or class schedules;

- o Restrictions on contact between the victim and her assailant (no contact orders);

- o Leaves of absence;

- o Increased security and monitoring of certain areas of campus. *Id.* ¶ 25.

- At the time of the attack, Defendant maintained an Office for Equity and Inclusion which included, *inter alia*, Title IX Grievance Procedures and a sexual violence prevention program called "Not Anymore." *Id.* ¶ 26.

- Under this program, all students were required to complete an interactive program designed to provide critical information about sexual assault, dating violence, domestic violence, and stalking as well as resources available both on and off campus. *Id.* ¶ 27.

- As evidenced by the foregoing policies and programs, Defendant had advanced knowledge of the incidence of sexual harassment and sexual assault on college campuses and the correlation between alcohol consumption and sexual harassment and sexual assault. *Id.* ¶ 28.

- The gathering on October 22-23, 2020, and the events leading up to it including the attack occurred in violation of Defendant's policies despite Defendant's actual knowledge of said violations and the risks posed by said violations. *Id.* ¶ 29.

- Immediately following the attack, Plaintiff's mother reached out to Defendant's administration for assistance in navigating the post-attack process and was referred to the Office of Student Rights and Responsibilities ("Office"). *Id.* ¶ 32.

- Thereafter, she reached out to the Office on several occasions over approximately two weeks but received no response. *Id.* ¶ 33.

- It wasn't until she contacted Defendant's president's office that Plaintiff's mother received a response from the Office. *Id.* ¶ 34.

- Thereafter, Plaintiff was compelled to participate in a ninety-minute interview conducted by the Office Director during which Plaintiff was required to provide graphic details concerning the attack. *Id.* ¶ 35.

- During the interview, Plaintiff, who was crying and was visibly traumatized, told the Director that it was very difficult for Plaintiff to discuss the details of the attack. *Id.* ¶ 36.

- Despite the obvious emotional trauma, the Director told Plaintiff that she was required to provide graphic details so that the Director could determine whether Plaintiff was being truthful. *Id.* ¶ 37.

- Despite the violent attack, Szegda was permitted by CCSU to remain on campus for three to four weeks following the attack. *Id.* ¶ 38.

- Despite the violent attack, Szegda was permitted to complete his Fall semester at CCSU and participate in varsity athletics pursuant to a scholarship even after moving off of campus. *Id.* ¶ 39.

- Plaintiff also requested that the Defendant provide her with an advocate to assist in post-attack process. *Id.* ¶ 40.

- After a couple of brief conversations with the advocate, Plaintiff learned that the advocate's employment was terminated in the absence of any subsequent notification to Plaintiff. *Id.* ¶ 41.

- Plaintiff had a math exam which had previously been scheduled for October 23, 2020, *i.e.*, the same date as her attack. *Id.* ¶ 42.

- Following the attack and while Plaintiff was being examined with a "rape exam kit" at the hospital, her mother emailed Plaintiff's math teacher, informed him that Plaintiff had been attacked, and requested that she be permitted to take the exam at a later date. *Id.* ¶ 43.

- Plaintiff's math teacher, an employee of the Defendant, expressed disapproval that he had been contacted by Plaintiff's mother (rather than Plaintiff herself) and refused to allow Plaintiff to reschedule the exam. Plaintiff was consequently required to re-take the math course. *Id.* ¶¶ 44-45.

- For the foregoing reasons, Defendant failed and at times refused to provide the "supportive measures" to Plaintiff it promised its students and in violation of its Title IX Grievance Procedures. *Id.* ¶ 46.

- At all times relevant to this claim, CCSU, its agents and/or employees were aware that student-residents were violating CCSU's rules, polices, and/or restrictions related to student gatherings in the hours leading up to the attack during the early hours of October 23, 2020. *Id.* ¶ 46.

- At all relevant times, CCSU and its agents were aware of the irrefutable statistical correlation between alcohol consumption and "student versus student" sexual harassment and sexual assault as detailed in Defendant's "Not Anymore" program and the services provided through the Ruthe Boyea Women's Center. *Id.* ¶ 49.

**Standard of Review**

**Rule 12(b)(6)**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F. 3d 692, 699 (2d Cir. 2010).

**Motion to Amend**

A plaintiff may amend his complaint once as a matter of right within twenty-one days after service of the complaint or, if a responsive pleading is required, within twenty-one days after service of the responsive pleading. Fed. R. Civ. P. 15(a)(1); *Blaine v. UConn Health Care*, No. 3:18-CV-00359 (MPS), 2018 WL 3448165, at *1 (D. Conn. July 17, 2018). In all other cases, the plaintiff may amend his complaint with consent of the defendant or with the Court's leave. Fed. R. Civ. P. 15(a)(2). Generally, leave to amend should be "freely give[n]." *Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v.*

*Giftports, Inc.*, 758 F. 3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted). "An amendment is considered futile if the amended pleading . . . would be subject to a successful motion to dismiss." *Faryniarz v. Ramierz*, 62 F. Supp. 3d 240, 249 (D. Conn. 2014) (quotation marks omitted)).

**Discussion**

Title IX provides in pertinent part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

20 U.S.C. § 1681(a). And it is well settled that Title IX includes an implied private right of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979).

For schools receiving federal funds, Title IX generally prohibits the disparate provision of programs, aid, benefits or services or inequitable application of rules or sanctions on the basis of sex. *Davis v. Monroe City Board of Education,* 526 U.S. 629, 646-47 (1999). As relevant here, it also prohibits such schools from being deliberately indifferent to student-on-student sexual harassment. *Id.*

A plaintiff alleging a school's liability arising out of student-on-student sexual misconduct, must allege that (1) a federally funded educational institution (2) was deliberately indifferent to (3) and had actual knowledge of (4) sexual harassment that was so severe, pervasive and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits of the school. *Id. See also, Roskin-Frazee v. Columbia University,* 474 F. Supp. 3d 618, 623 (S.D.N.Y. 2019). Under Title IX, a school acts with deliberate indifference "when the [school's] response to known discrimination is clearly unreasonable in light of the known circumstances." *Gant ex rel. Gant v. Wallingford Bd. Of Educ.*, 195 F. 3d 134, 141 (2d Cir.

1999). "Stated differently, to comply with Title IX, a university must respond to known student harassment in a manner that is not clearly unreasonable." *Roskin-Frazee,* 474 F. Supp. at 624. The case law in this developing area of the law makes clear that the "clearly unreasonable" metric and the "actual knowledge" requirement are not insignificant. The "clearly unreasonable" standard is a high standard whose purpose is to avoid the risk that a defendant school "would be liable in damages not for its own official decision but instead for [a third party's] independent actions." *Davis,* 526 U.S. at 643. Similarly, a university may not be found liable under Title IX without actual knowledge or notice of the harassment. *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F. 3d 655, 666 (2d Cir. 2012). *See also, Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) (concluding that "it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official."). Thus, allegations that the defendant should have known about the harassment, *i.e.*, allegations of constructive knowledge, are insufficient to state a Title IX claim. *Id.* at 292-293. The question of whether the allegations establish actual knowledge or whether the defendant's conduct was clearly unreasonable, may be decided on a motion to dismiss. *Davis,* 526 U.S. at 649.

As indicated above, Plaintiff alleges that the University is liable under Title IX for both the assault as well as the manner by which they responded to the assault following Plaintiff's disclosure. Defendant asserts that the Plaintiff has not adequately alleged "actual knowledge" that the assailant posed any risk to Plaintiff and therefore cannot be liable for the assault itself. Defendant further asserts that Plaintiff's allegations do not establish that Defendant's conduct in the aftermath of the assault was "clearly unreasonable." Plaintiff disagrees.

**The Assault**

The Court agrees with Defendant that the Complaint does not adequately allege that Defendant had actual knowledge of the assault or risk of assault before it occurred. Plaintiff does not allege any prior interaction with her assailant which she reported to Defendant. Indeed, she alleges no prior interaction with her assailant at all. Nor does she identify her assailant as a member of a specific group known to the University to pose a risk of sexually assaulting other students to include Plaintiff. *See e.g., Posso v. Niagara University,* 518 F. Supp. 3d 688 (W.D.N.Y. 2021). The Complaint merely alleges that Defendant was aware generally of the risk of sexual assaults on campus and that sexual assaults occurred not only on Defendant's campus but on campuses across the nation. She alleges that the gathering at which the sexual assault occurred was in violation of several of Defendant's policies and that Defendant knew that students violated these policies. Finally, she asserts that Defendant was aware that on campus social gatherings involving the excessive consumption of alcohol created a high risk for "nonconsensual sexual contact" with female undergraduate students. These allegations are not actionable. They merely assert that Defendant was aware of a risk of student-on-student sexual assault generally, not of any particular risk to Plaintiff posed by her assailant and certainly not with respect to the events that unfolded on October 23, 2020.

This claim is dismissed with prejudice insofar as the Amended Complaint fares no better. To be sure, the allegations added with respect to the question of actual knowledge are more robust than those originally pleaded. However, they still do not rise above the level of constructive knowledge, which, as held in *Davis,* is insufficient. Plaintiff enhances her allegations with a description of the efforts Defendant undertakes to educate students on the risk of sexual assault; the programs it provides in an effort to prevent such assaults; and the services it provides in the event of an assault. She provides greater detail in terms of Defendant's policies regarding social

gatherings and alcohol consumption as well as ingress and egress to the dormitories. She sets forth the role of Resident Assistants in enforcing the policies and alleges that the RAs did not enforce the policies – generally and on October 23, 2020. Finally, Plaintiff alleges that Defendant, through its agents, was aware that students were violating the rules, policies, and/or restrictions related to student gatherings "in the hours leading up to the attack during the early hours of October 23, 2020." Am. Compl. ¶ 47. Plaintiff argues, in seeking to amend her complaint, that the knowledge that the policies were being violated on the night of the assault, coupled with the knowledge of the "irrefutable statistical correlation between alcohol consumption and student versus student sexual assault" (*id.* ¶ 49) suffices to plausibly allege actual notice for purposes of Title IX liability.

The Court agrees that the allegations establish constructive notice that the circumstances unfolding created an increased risk that a student-on-student sexual assault might occur. It does not however establish actual knowledge that Plaintiff's assailant posed a risk of sexual assault to Plaintiff or to any specific person. The knowledge requirement is designed to create liability arising from a school's inaction in the face of a known risk to Plaintiff. *See Gebser*, 524 U.S. at 290. Indeed, to find "actual knowledge" under these circumstances would be to eviscerate the requirement entirely. And further, finding liability under these circumstances would serve as a disincentive for a school to take proactive preventive measures such as educating itself and its students, and enacting policies to limit the risk of such assaults. Liability under these circumstances is precisely the risk the *Davis* court recognized and sought to avoid – the risk that universities would be liable not for their own conduct but for the independent actions of third parties. *Davis,* 526 U.S. at 640-641.

**After the Assault**

Defendant next argues that the allegations cannot support a claim of deliberate indifference because Defendant's response, once it became aware of the assault, was not "clearly unreasonable." In this vein, Plaintiff alleges that Defendant failed to reasonably inform Plaintiff of her assailant's status at the University including his attendance at classes or continued presence on campus. She alleges he was permitted to stay on campus and finish his Fall semester. Plaintiff alleges that she requested but was not permitted to reschedule a math test which had been scheduled for October 24, 2020.

The Court need not determine whether these somewhat spartan allegations plausibly allege "clearly unreasonable" conduct on the part of Defendant because the allegations of the Amended Complaint are sufficient to do so. In addition to the above allegations, Plaintiff asserts that: (a) her mother immediately reached out to Defendant for assistance in navigating the "post-attack" process and she was referred to the Office of Student Rights and Responsibilities; (b) Plaintiff's mother contacted that Office but received no response for two weeks until she reached out to the president's office; (c) Plaintiff was compelled to sit for a 90 minute interview where she was forced to recount in graphic detail the assault, during which Plaintiff was crying and visibly traumatized; (d) notwithstanding the obvious trauma, Plaintiff was required to recount the details so the Director could determine whether she was telling the truth; (e) at Plaintiff's request she was provided an advocate but the advocate's employment was thereafter terminated and Plaintiff was not advised of same; and (f) Plaintiff's math exam was scheduled for October 23, 2020,[4] the same day as the assault but when Plaintiff's mother contacted the professor to request that Plaintiff be permitted to take the test at a later date (because Plaintiff was undergoing examination at the hospital), the professor expressed disapproval that he was hearing from Plaintiff's mother and not the Plaintiff

---

[4] This is a correction from the original complaint which indicated the exam had been scheduled for October 24, 2020.

herself and denied the request. As to this last allegation, Plaintiff includes that her mother advised the math professor that Plaintiff had been assaulted.

As buttressed in her proposed Amended Complaint, Plaintiff has plausibly alleged that Defendant's response to the sexual assault, once it had knowledge of it, was "clearly unreasonable" and thus has plausibly alleged a violation of Title IX arising therefrom.

**Conclusion**

The motion to dismiss is GRANTED. Plaintiff's motion to amend is GRANTED in part. Plaintiff may file an Amended Complaint containing the additional and corrected allegations that Defendant violated Title IX following Plaintiff's report of the assault. The Amended Complaint must be filed by **October 10, 2023**.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of September 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE